IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2015

## STATE OF TENNESSEE v. CHRISTOPHER DEWAYNE HENSON

**Appeal from the Circuit Court for Maury County**
**No. 21745     Stella L. Hargrove, Judge**

_____

**No. M2013-01285-CCA-R3-CD – Filed June 2, 2015**

_____

The Defendant-Appellant, Christopher Dewayne Henson, was convicted by a Maury County jury of reckless endangerment. The trial court sentenced the Defendant to 11 months and 29 days and ordered that he serve 45 days in confinement, with the remainder of his sentence to be served on supervised probation. On appeal, the Defendant argues that (1) the evidence is insufficient to sustain his conviction; (2) the trial court erred in admitting color photographs of the victim's injuries; and (3) the trial court abused its discretion in sentencing the Defendant. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

William C. Barnes, Cordova, Tennessee, for the Defendant-Appellant, Christopher Dewayne Henson.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Mike Bottoms, District Attorney General; and Dan Runde, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On April 1, 2012, the victim, Jeff Roberts, became involved in an altercation with his nephew, Dylan Henson.[1] The altercation began as a verbal dispute between Dylan

---

[1] Because several witnesses share the same last name, we will refer to them by their first names. We intend no disrespect in doing so.

and the victim, but it eventually turned physical and involved several other family members, including the Defendant. During this altercation, the victim was struck on the head with an metal bar and had to receive stitches and staples in the top and side of his head.

At trial, the victim testified that on the evening of April 1, 2012, he and his girlfriend, Yolanda Hill, were sitting on the front porch of her house when he saw Dylan and several of his friends arrive in a pickup truck. The group of teenagers parked in a field across the street from Ms. Hill's home and began throwing rocks in the field. The victim did not want the teenagers to throw rocks in the field because he mowed the field and feared the rocks would damage his lawn mower. When he asked Dylan to stop throwing rocks, Dylan and his friends walked into the road and began cursing at and threatening the victim. The victim's mother, Annie Spears, lived next door to Ms. Hill along with the victim's sister, Kelly Henson; Kelly's husband, the Defendant; and the Hensons' two children, Dylan and Casey. Upon hearing the verbal dispute between Dylan and the victim, Ms. Spears came onto her porch and told Dylan to come home. When he refused, Ms. Spears went inside her home and asked Kelly and the Defendant to break up the dispute. Kelly tried to persuade Dylan to come home, and the victim left Ms. Hill's porch and walked Dylan and Kelly back towards the road. When the victim turned to walk back to Ms. Hill's porch, he saw Ms. Hill run past him and attack Kelly. While the victim tried to break up the fight between the two women, Dylan hit him in the face with a walking cane three or four times. The victim stumbled a few steps back and saw the Defendant holding a metal bar in his hand. The Defendant told the victim to "get [his] hands off his kid" and then hit the victim on the head twice.

The victim identified the Defendant in court as the person who hit him with the metal bar. He denied that he pulled out a knife during the altercation and insisted that he did not threaten Dylan, Kelly, or the Defendant in any way before the Defendant hit him. He agreed that after being hit by the Defendant, he retrieved a "shepherd's cane" from his yard and swung it at the Defendant and Dylan to get them to leave Ms. Hill's property. He was uncertain whether he hit the Defendant, although he acknowledged that it was possible. The victim and Ms. Hill called 911 after the altercation. The police responded to the scene that night, and the victim and Ms. Hill went to the police station the next day to give a statement.

Annie Spears, the victim's mother and the Defendant's mother-in-law, testified on behalf of the Defendant. She agreed that a verbal altercation broke out between Dylan and the victim because Dylan refused to stop throwing rocks in the field across the street. According to Ms. Spears, the victim pulled a knife out of his pocket and Dylan retrieved Ms. Spears's walking cane out of her car. She told the victim, "[Y]ou better not cut . . .

one of my grandkids," and he put the knife back in his pocket; however, Dylan continued "backing [the victim] up" towards Ms. Hill's house so the victim retrieved a shepherd's cane out of the yard. Ms. Spears observed Dylan hit the victim with the walking cane. She testified that she sent Kelly and the Defendant to break up the altercation, and when the Defendant walked into Ms. Hill's yard to make Dylan come home, "it just went crazy." Ms. Hill retrieved a metal bar from her house and walked into the yard, and the victim continued to swing the shepherd's cane at Dylan and the Defendant. Ms. Spears testified that a physical fight broke out between the Defendant and the victim after the victim hit the Defendant with the shepherd's cane. Ms. Spears agreed that the Defendant and the victim were "knuckling it out," but she testified that she never saw the Defendant hit the victim with a metal bar.

On cross-examination, Ms. Spears acknowledged that the Defendant could have hit the victim with a metal bar, but she did not see it happen. She agreed that she "really [did not] know what the circumstances were, at the time, when [the victim] got hit with the bar . . . [b]ecause there was so much confusion" and added, "It could have been anybody that hit [the victim]." She also agreed that the victim showed her his head injuries that night after the altercation.

Joshua Braden, a police officer with the Mount Pleasant Police Department, responded to the scene on April 1, 2012. According to Officer Braden's incident report, Dylan reported that the victim had a knife in his hand at some point during the altercation, but no other witnesses reported seeing a knife. He confirmed that Ms. Spears never told him that she saw the victim with a knife that night. Officer Braden testified that he observed several injuries to the victim's head and face, including a swollen eye and a "big cut" on the top of his head. Officer Braden recovered a walking cane from Ms. Spears after being informed by witnesses that it was used to hit the victim. The victim told Officer Braden that the Defendant also hit him with a metal bar, which Officer Braden found in a trailer attached to the Defendant's car. On cross-examination, Officer Braden stated that the Defendant reported that the victim initially attacked him with the metal bar and that he took it away and hit the victim with it. He conceded that he could not recall whether he asked Ms. Spears if the victim had a knife during the altercation.

Following deliberations, the jury convicted the Defendant of reckless endangerment as a lesser-included offense of aggravated assault. A sentencing hearing was held on April 11, 2013, after which the trial court sentenced the Defendant to 11 months and 29 days and ordered him to serve 45 days in confinement with the remainder of his sentence to be served on supervised probation. On April 18, 2013, the Defendant

filed a timely motion for new trial, which was denied by the trial court on May 16, 2013. Subsequently, the Defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the convicting evidence. He also argues that the trial court abused its discretion in admitting color photographs of the victim's injuries and in sentencing the Defendant. The State responds that the evidence is sufficient to sustain the Defendant's conviction for reckless endangerment and maintains that the trial court did not abuse its discretion in the admission of evidence or in sentencing the Defendant. We agree with the State.

**I. Sufficiency of the Evidence.** The Defendant argues that the evidence is insufficient to sustain his conviction for reckless endangerment. He asserts that the evidence establishes that the altercation was "mutual combat," and given that he did not start the altercation and was the last person involved in the fight, he is "clearly . . . the least culpable." The State responds that the evidence is sufficient to sustain the Defendant's conviction.[2]

When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant

---

[2] In addition to addressing the sufficiency of the evidence supporting the Defendant's conviction, the State's brief also thoroughly addresses the trial court's role as the thirteenth juror. See Tenn. R. Crim. Pro 33(d) (providing that the trial court "may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence"). The Defendant's brief does not clearly challenge the trial court's actions as thirteenth juror, although his argument appears to suggest that the jury's verdict is against the weight of the evidence. In any event, the trial court properly fulfilled its role as the thirteenth juror in this case, stating on the record, "As Thirteenth Juror, the [c]ourt accepts and approves the verdict of this Jury." Accordingly, this issue is not subject to appellate review, and our review is limited to the sufficiency of the evidence. See State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995) (citing State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993)).

bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

Here, the Defendant was charged with aggravated assault but was convicted of the lesser-included offense of misdemeanor reckless endangerment. A person commits reckless endangerment "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Id. § 39-11-302(c). This "risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Id. Serious bodily injury includes bodily injury that involves a substantial risk of death, protracted unconsciousness, extreme physical pain, or protracted or obvious disfigurement. Id. § 39-11-106(34).

In challenging the sufficiency of the evidence, the Defendant does not specifically contest any elements of the offense of reckless endangerment; rather, he simply claims that as the last person involved in the altercation, he was the "least culpable." Even if true, however, this fact has no bearing on the jury's finding that the Defendant's reckless conduct placed the victim in imminent danger of death or serious bodily injury. Viewed in the light most favorable to the State, the evidence at trial established that during an altercation involving several family members, the Defendant struck the victim at least

two times in the head with a metal bar. As a result, the victim sustained two large cuts to his head that required stitches and staples. Although witnesses provided somewhat conflicting accounts about the altercation, the jury's verdict of guilt resolved all conflicts in the evidence in favor of the State's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). We will not reweigh or reevaluate this evidence on appeal. See Dorantes, 331 S.W.3d at 379. Based upon the record, we conclude that a rational juror could find beyond a reasonable doubt that the Defendant's reckless conduct placed the victim in imminent danger of death or serious bodily injury. He is not entitled to relief on this issue.

**II. Admission of Color Photographs.** The Defendant next asserts that the trial court erred in admitting eight color photographs of the victim's injuries because they were unfairly prejudicial. He argues that the color photographs were cumulative in nature given that three black and white photographs of the victim's injuries had already been introduced, and the only purpose in admitting the color photographs was to inflame the jury. The State responds that the photographs were relevant to show the victim's injuries and that the trial court did not abuse its discretion by allowing their admission.

The admissibility of photographs lies within the sound discretion of the trial court, and the court's ruling on admissibility will not be overturned on appeal absent a showing that the trial court abused that discretion. State v. Odom, 336 S.W.3d 541, 565 (Tenn. 2011) (citing State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978)). To be admissible, a photograph must be relevant to an issue in dispute. State v. Vann, 976 S.W.2d 93, 102 (Tenn. 1998) (citing State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994); Banks, 564 S.W.2d at 951). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, a relevant photograph "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice has been defined by the Tennessee Supreme Court as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." Banks, 564 S.W.2d at 951. Photographs must never be used "solely to inflame the jury and prejudice them against the defendant." Id.

After reviewing the photographs in the instant case, we conclude that they were relevant to show the extent of the victim's injuries, and the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. Initially we note that "a relevant photograph is not rendered inadmissible merely because it is

cumulative." State v. Morris, 24 S.W.2d 788, 811 (Tenn. 2000); see also State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993), cert. denied, 511 U.S. 1046 (1994) (color photographs of deceased victims at crime scene were not unnecessarily cumulative or prejudicial despite admission of color videotape showing victims' bodies as they were found); State v. Brown, 836 S.W.2d 530, 551 (Tenn. 1992) (photographs of the victim's body were admissible despite oral testimony graphically describing the victim's injuries). Although three black and white photographs also showing the victim's injuries were introduced, the color photographs more clearly depicted the extent of the victim's injuries, which was essential to the State's case.[3] See State v. Melissa J. Pewitt, No. 01C01-9706-CR-00229, 1998 WL 410883, at *5 (Tenn. Crim. App. July 23, 1998) (photographs of victim's injuries were relevant in prosecution for especially aggravated burglary because the State was required to prove the victim suffered "serious bodily injury" and were not unnecessarily cumulative despite victim's display of the scars on her body to the jury). Further, the photographs were not particularly gruesome or inflamatory. Accordingly, we discern no abuse of discretion by the trial court in allowing the photographs' admission.

**III. Sentencing.** In his final issue on appeal, the Defendant argues that the trial court imposed an excessive sentence. The Defendant again emphasizes that he "was the last person to join into this fight" and maintains that "[j]ustice requires a different outcome." However, the Defendant failed to support this issue with sufficient argument or citations to authority. As such, this issue is technically waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also Tenn. R. App. P. 27(a)(7) (A brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Waiver notwithstanding, we conclude that the trial court did not abuse its discretion in sentencing the Defendant.

Recently, the Tennessee Supreme Court concluded that a trial court's sentencing determinations in felony cases should be reviewed under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). Shortly thereafter, the Tennessee Supreme Court applied the abuse of discretion standard, accompanied by a presumption

---

[3] Although the Defendant was convicted of reckless endangerment, which does not require proof of bodily injury, the Defendant was indicted and tried for aggravated assault, which required the State to prove that the victim suffered serious bodily injury. See T.C.A. § 39-13-102.

-7-

of reasonableness, to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). To date, the Tennessee Supreme Court has not addressed whether the abuse of discretion standard with a presumption of reasonableness applies to misdemeanor sentencing. Notwithstanding, the reasoning espoused in State v. King, that Bise applies to "all sentencing decisions," suggests that it is the appropriate standard of review to apply to misdemeanor sentencing cases as well. See King, 432 S.W.3d 316, 324 (Tenn. 2014) (emphasis added). Moreover, this court has recently applied the Bise standard of review to misdemeanor sentencing cases. See State v. Michael Glen Walsh, No. E2012-00805-CCA-R3-CD, 2013 WL 1636661, at *4 (Tenn. Crim. App. Apr. 17, 2013); State v. Sue Ann Christopher, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013). Therefore, we will do the same in this case.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2012). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2012), Sentencing Comm'n Comments.

Misdemeanor sentencing is governed by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. See T.C.A. § 40-25-302(b). The sentencing court is granted considerable latitude in misdemeanor sentencing. State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (citing State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998)). The trial court must consider the purposes and principles of sentencing and the appropriate enhancement and mitigating factors, but the court is not required to place specific findings on the record.

T.C.A. § 40-35-302(d); <u>Troutman</u>, 979 S.W.2d at 274. "Rather, the court must only avoid arbitrarily imposing incarceration." <u>State v. Heath Baldwin</u>, No. W2005-02906-CCA-R3-CD, 2007 WL 845911, at *4 (Tenn. Crim. App. Mar. 21, 2007) (citing <u>Troutman</u>, 979 S.W.2d at 274).

Unlike felons, "misdemeanants are not given the presumption of a minimum sentence." <u>State v. Creasy</u>, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Further, those convicted of a misdemeanor are not presumed eligible for alternative sentencing. <u>State v. Williams</u>, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995) (citing <u>Creasy</u>, 885 S.W.2d at 832-33). The misdemeanor sentencing statute requires that the trial court consider the purposes and principles of sentencing when calculating the percentage of the sentence to be served in confinement prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(b), (d) (2012). However, there is no strict requirement that the trial court make findings on the record regarding the percentage of the defendant's sentence to be served in confinement. <u>Troutman</u>, 979 S.W.2d at 274.

In the instant case, the trial court's oral sentencing findings show that it considered the purposes and principles of the sentencing act and complied with the misdemeanor sentencing statute in imposing the Defendant's sentence. The record establishes that the court reviewed the presentence report and considered the victim's testimony and the nature of the offense when determining the manner and length of the Defendant's sentence. The court noted that the Defendant refused to take responsibility for his conduct, and it emphasized the serious injuries suffered by the victim. Although the court did not place its findings regarding its consideration of the applicable enhancement and mitigating factors on the record, it was not required to do so in a misdemeanor sentencing case. <u>See</u> <u>Troutman</u>, 979 S.W.2d at 274. The record reflects that the trial court properly considered the sentencing principles and imposed a sentence that was not arbitrary. Accordingly, we discern no abuse of discretion. The Defendant is not entitled to relief.

## <u>CONCLUSION</u>

Based on the foregoing authorities and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE